IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| MEL D. HORNER,<br><br>    Plaintiff,<br><br>  vs.<br><br>FIRST HAWAIIAN BANK; MORTGAGE ELECTRONIC REGISTRY SYSTEM; MORTGAGE SERVICE CENTER; BANK OF HAWAII; JONATHAN W.Y. LAI; TRACEY L. KUBOTA; DAVID NAKASHIMA; LAW OFFICES OF WATANABE & ING; JANE KWAN, COMMISSIONER; GARY KAWAMOTO, ASSISTANT VICE PRESIDENT OF FIRST HAWAIIAN BANK, STATE OF HAWAII; in their individual and official capacities,<br><br>    Defendants. | CIVIL NO. 16-00122 DKW-KSC<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE AND (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT** |

**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE AND
(2) GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**

Mel Horner, proceeding pro se, asserts a variety of federal and state law claims against the lenders and servicers of the mortgage on his home. He filed this action after First Hawaiian Bank (FHB) successfully obtained a foreclosure

judgment against him and his property in state court. As set forth below, Horner's attempt to strike FHB's Motion to Dismiss for professional conflict reasons lacks merit. Further, because Horner fails to state a federal claim, the only potential basis for this Court's subject matter jurisdiction is lacking, resulting in the dismissal of this action.

## BACKGROUND[1]

On June 4, 2008, FHB made two loans to Horner in the principal amounts of $344,000.00 and $64,500.00, respectively, both of which were secured by mortgages on a home owned by Horner. FHB initiated a foreclosure action on Horner's home on September 19, 2011 in the Circuit Court of the First Circuit, State of Hawai'i.[2] Complaint ¶ 28; *see also* Dkt. No. 18-6 (Exh. B). On April 6, 2015, the state court entered its Foreclosure Order and Foreclosure Judgment, establishing FHB's entitlement to foreclose on the mortgages and ordering that the home be sold. Dkt. Nos. 18-9 (Exh. E), 18-10 (Exh. F). Horner opposed the foreclosure through various filings in both state and bankruptcy court. *See* Dkt. Nos. 18-11 (Exh. G), 18-12 (Exh. H), 18-13 (Exh. I).

---

[1] The following factual background is drawn from Horner's Complaint, as well as other publicly filed documents attached as exhibits to Defendants' motions.

[2] The Court takes judicial notice of this state court foreclosure action, *First Hawaiian Bank v. Horner et al.*, Civil No. 11-1-2149-09. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of a motion to dismiss") (internal quotation marks and citation omitted). Defendant Bank of Hawaii is not a party to the foreclosure action.

Apparently in response to the foreclosure proceedings, Horner initiated this action on March 17, 2016. Dkt. No. 1. He asserts the following federal claims: violations of the Truth in Lending Act (First, Second and Third Causes of Action), violation of the Servicemembers Civil Relief Act (Fourth Cause of Action), and violations of the Fair Debt Collection Practices Act (no cause of action explicitly enumerated). In addition, Horner generally asserts fraud claims under Hawai'i state law.

Defendants FHB and the Bank of Hawaii (BOH) both moved to dismiss the Complaint. Rather than filing a timely opposition, Horner filed a Motion to Strike FHB's Motion to Dismiss after the opposition deadline had passed. Dkt. No. 27. Horner also filed an untimely opposition to BOH's Motion to Dismiss. Dkt. No. 26. The Court heard oral argument on all three motions on June 3, 2016. Dkt. No. 31.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id*. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

**I.     Horner's Motion to Strike**

The Court first addresses Horner's contention that FHB's Motion to Dismiss should be struck on the basis of alleged violations of Hawaii Rules of Professional Conduct 1.7 and 3.7. As FHB points out, Horner filed his Motion to Strike after he had missed the deadline to file his opposition to FHB's Motion to Dismiss. The Court is cognizant that the purpose of the "[Hawaii Rules of Professional Conduct] can be subverted when they are invoked by opposing parties as procedural weapons." Haw. R. Prof'l Conduct, Scope at ¶ 7. In any event, Horner's arguments in favor of striking FHB's Motion to Dismiss lack merit.

4

Rule 1.7 relates to conflicts of interest and generally prohibits representation of a client if there is a concurrent conflict of interest, which exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." Haw. R. Prof'l Conduct Rule 1.7(a)(1) & (2). Notably, the rule contains the following exception:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives consent after consultation, confirmed in writing.

*Id.* at 1.7(b).

Rule 1.7 does not apply for two reasons. First, there is no existing or apparent conflict of interest here. The Defendants have not asserted any cross-claims against one another, nor does it appear likely that their interests might diverge based on the claims asserted. Second, even if a conflict of interest existed,

FHB's counsel would still be able to represent the several defendants they currently represent because the requirements set forth in Rule 1.7(b) have been satisfied. *See* Declaration of Jonathan Lai, Dkt. No 29-1 at 1-2.

Rule 3.7 relates to the general prohibition against a lawyer acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. As the Court explained at the hearing, it is premature at this time to determine whether the lawyers in the instant case are likely to be called as necessary witnesses at trial. Simply invoking that possibility is plainly insufficient, else an opposing party could routinely disqualify adverse counsel whenever it suited. Rule 3.7, therefore, also does not provide a basis to strike FHB's Motion to Dismiss.

## II. Bank of Hawaii's Motion to Dismiss

BOH's place at the defense table is a bit of a mystery. At oral argument, Horner clarified that BOH is a named defendant solely because BOH is the actual holder of the mortgages that FHB sought to foreclose in the state court action. In entering the Foreclosure Order and Judgment in favor of FHB, however, the state court found otherwise. *See* Dkt. No. 18-9 (Exh. E, FOF Nos. 6-7, 15-16, 19-20, 29-30). Horner, in other words, asks this Court to revisit, and to ultimately disturb, a material factual finding made by the state court. The Court is unwilling to do so because of *Rooker-Feldman*. The *Rooker-Feldman* doctrine provides that:

> a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a

>United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.

*Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998) (quoting *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994)).  In short, *Rooker-Feldman* prohibits federal courts from directly reviewing state court judgments even when a federal question is presented.  *See id*.

Because Horner seeks to assert claims against BOH based solely on allegations that BOH may be the holder of the relevant mortgages, those claims are barred by the *Rooker-Feldman* doctrine.  The state court's determination that FHB is indeed the rightful owner and holder of the mortgages cannot be appealed to this Court.  As this Court explained at the hearing, any such challenge must be made in the state court proceedings and/or appealed through the state-court appellate system.  Accordingly, the Court GRANTS BOH's Motion to Dismiss.

**II.     First Hawaiian Bank's Motion to Dismiss**

    **A.     Federal Claims**

Horner's federal claims against FHB all fail as a matter of law.

        **1.     TILA Claims**

In Counts 1 through 3, Horner alleges that FHB violated 15 U.S.C. §§ 1641(f)(2) and 1639(1)(2) by failing to provide: (1) the full name, address or phone number of the owner of the obligation; and (2) an accurate payoff statement within a reasonable time after receiving two separate requests.  *See* Complaint ¶¶ 32-57.

Horner seeks damages under 15 U.S.C. §§ 1640(a)(2) and 1640(a)(3). *Id.* ¶¶ 45, 57.

Horner's TILA claims fail to state a claim because they are barred by the statute of limitations. Damages (both statutory and actual damages) are recoverable under TILA for violations of its disclosure requirements. 15 U.S.C. § 1640(a). However, section 1640(e) imposes a one-year statute of limitations on claims for damages. That one-year period typically runs from the date of consummation of the transaction . *King v. State of California*, 784 F.2d 910, 913 (9th Cir. 1986).

In the instant case, Horner executed the relevant loan documents on or about June 4, 2008. Horner did not file the subject Complaint until March 17, 2016. Because Horner filed his action almost eight years after the consummation of the loans at issue, and he failed to cite any circumstances that would justify equitable tolling,[3] any claim for damages under TILA is barred by the one-year statute of limitations.[4] Accordingly, Counts 1-3 are dismissed with prejudice.

---

[3]At the hearing, the Court asked Horner whether there were any circumstances that would equitably toll the statute of limitations period, but Horner was unable to provide the Court with any allegations that would support a claim for equitable tolling. Accordingly, granting leave to amend these TILA claims would be futile.

[4]FHB also points out, and the Court agrees, that a claim for rescission under TILA would also be time-barred by the three-year statute of limitations. *See* 15 U.S.C. § 1636(f).

**2.    SCRA Claim**

In Count 4, Horner claims that FHB has failed to or refused to comply with 50 U.S.C. § 533 of the Servicemembers Civil Relief Act ("SCRA") by failing to consider Horner's military status in relation to his loan modification requests pursuant to the Home Affordable Refinance Program ("HARP") . Complaint ¶¶ 58-60.  This claim must be dismissed because the Servicemembers Civil Relief Act ("SCRA") does not provide a cause of action for the relief that Horner seeks.

The purpose of the SCRA is "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation."  50 U.S.C. app. § 502(1).  "It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including insurance, taxation, loans, contract enforcement, and other civil actions."  *Brewster v. Sun Trust Mortg. Inc.*, 742 F.3d 876, 878 (9th Cir. 2014).  As FHB points out, there is nothing in the SCRA that "even hints that there are specific SCRA requirements that lenders must satisfy when considering loan modification requests" from soldiers no longer on deployment status  Dkt. No. 18-3 at 18.  The only argument that Horner provided at the hearing was that after returning from Iraq in 2009, his application for a loan modification was denied.  The Court agrees with FHB that it cannot be in violation of the SCRA if FHB has not taken action

that is actually proscribed by the SCRA. Accordingly, Count 4 is dismissed with prejudice.

### 3. **FDCPA Claim**

Finally, to the extent the Complaint alleges a claim under the Fair Debt Collection Practices Act ("FDCPA"), that claim similarly fails as a matter of law.[5] As a preliminary matter, it is unclear whether any of the named Defendants in the instant case even qualify as debt collectors under the FDCPA. Even if one did, however, FDCPA claims are subject to a one-year statute of limitations. *See Lyons v. Michael & Assoc.*, --- F.3d ---, 2016 WL 3192623, at *2 (9th Cir. June 8, 2016) ("A claim under the FDCPA must be brought 'within one year from the date on which the violation occurs.'" (quoting 15 U.S.C. § 1692k(d))).

Here, Horner generally alleges that "Defendants violated the [F]air Debt Collection Practices Act when it tried to collect payment on the obligation of a Promissory Note against the Plaintiff when the note was not in possession of the Defendants Bank[.]" Dkt. No. 1 at 2. Though the allegation is vague, it is clear that any FDCPA claim would arise out of events preceding the state court foreclosure action. *See* Complaint ¶ 28 ("On or about September of 2011, Defendant FHB by and through its Counsel of Record (Defense Counsel),

---

[5] Although the Complaint's caption contains a reference to 15 U.S.C. §§ 1692(e)-(g) of the Fair Debt Collections Practices Act, the body of the Complaint does not clearly articulate an FDCPA claim.

10

knowingly, intentionally and willfully, filed a FRAUDULENT BASED Complaint in the Circuit Court, State of Hawaii, seeking to Foreclose on Plaintiff's Real Property, for failure to make regular payments on the Loan."). The state court foreclosure action was initiated on September 19, 2011, and thus, the FDCPA accrued at the latest on this date. Because Horner did not initiate the instant action until March 17, 2016, an FDCPA claim arising out of the facts that led to the foreclosure action is time-barred and must be dismissed with prejudice.

B.     **State Law Claims**

Having dismissed the only federal claims that could support federal subject matter jurisdiction, this court may decline to exercise supplemental jurisdiction over the remaining state law claims in the complaint. 28 U.S.C. § 1367(c). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 (1988). "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). The Supreme Court has clarified that this does not require mandatory dismissal when federal claims are dismissed, but "in the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon,* 484 U.S. at 350 n. 7.

After careful consideration, the Court concludes that the factors of judicial economy, convenience, fairness, and comity balance in favor of declining supplemental jurisdiction over Horner's remaining state-law claims, particularly given the early stage of this litigation. Accordingly, those claims are also dismissed.

## **CONCLUSION**

The Court DENIES Horner's Motion to Strike (Dkt. No. 27) and GRANTS Defendants' Motions to Dismiss (Dkt. Nos. 15, 18). The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: July 8, 2016 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

Horner v. First Hawaiian Bank, et al.; CV 16-00122 DKW-KSC; ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE AND (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT